# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Rudd*, 2012 IL App (5th) 100528

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN RUDD, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-10-0528 |
| Filed | June 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for burglary based on the theft of two vacuum cleaners from a retail store was upheld on appeal over defendant's contention that the State failed to prove that he entered the store with the intent to commit a theft, since the evidence showed that shortly after defendant and a companion entered the store, his companion purchased two vacuums identical to the vacuums defendant took, the companion left the store with the vacuums he purchased, he then returned and gave defendant the receipt he had obtained, and then defendant attempted to leave the store without paying for the vacuums in his cart, and that evidence was sufficient to allow a rational jury to reasonably infer that defendant intended to commit the theft when he entered the store. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 09-CF-377; the Hon. Janet Heflin, Judge, presiding. |
| Judgment | Affirmed as modified. |

| Counsel on Appeal | Michael J. Pelletier, Johannah B. Weber, and Dan W. Evers, all of State Appellate Defender's Office, of Mt. Vernon, for appellant. |
| | |
| | Thomas D. Gibbons, State's Attorney, of Edwardsville (Patrick Delfino, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE CHAPMAN delivered the judgment of the court, with opinion. Presiding Justice Donovan and Justice Spomer concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendant, Melvin Rudd, appeals his conviction for burglary. The charges stemmed from the theft of two vacuum cleaners from a Walmart store. The defendant argues that (1) the evidence was insufficient to prove that he entered the store with the intent to commit a theft because the only evidence of his intent was evidence of the theft itself and (2) he was entitled to four additional days of sentence credit for time spent in pretrial detention. We affirm the defendant's conviction but modify the order to reflect four days of additional sentence credit.

¶ 2    The defendant was arrested at a Walmart store in Collinsville, Illinois, after stealing two vacuum cleaners. He was charged with retail theft (merchandise with a value in excess of $150) (720 ILCS 5/16A-3(a) (West 2008)) and burglary (720 ILCS 5/19-1(a) (West 2008)).

¶ 3    At the defendant's trial, store loss prevention officer Michael Reitz testified that he first noticed the defendant when he saw the defendant and another individual pushing carts in the vacuum cleaner aisle. Reitz did not see the defendant or the other suspect enter the store. He saw both men put two identical items into their carts. Those items were a Hoover vacuum cleaner and a Bissell steam cleaner, which were two of the most expensive vacuum cleaners in the store. Reitz continued to observe the two suspects. They remained in the vacuum cleaner aisle for approximately five minutes. During this time, Reitz did not hear or observe any conversation between them.

¶ 4    Reitz testified that after five minutes, one of the suspects headed toward the cash registers. At this point, Reitz was the only loss prevention officer in the store. Although his supervisor was working that day, she had left the store for her lunch break. Thus, Reitz explained, he was unable to follow both suspects. He decided to follow the defendant, the suspect who did not head toward the cash registers. Reitz explained that he made this choice because he believed that the defendant was not going to pay for the merchandise in his cart. He testified that he wanted to be sure to catch at least one of the two suspects.

¶ 5        Reitz testified that after the other suspect left, the defendant went to the lawn and garden section of the store and continued to look at merchandise, but he did not put any other items in his cart. A few minutes later, the other suspect came into the lawn and garden section and handed the defendant a receipt. The two suspects were together for approximately two to three minutes. When they separated, Reitz again followed the defendant.

¶ 6        Reitz saw the defendant take an indirect route to the front of the store and then head toward the exit. Reitz went ahead to the vestibule so he could apprehend the defendant when he attempted to leave the store with the vacuum cleaners. He testified that a store greeter asked the defendant to show her his receipt as he left the store. The greeter allowed the defendant to leave after he showed her the receipt. Reitz then approached the defendant and asked to see his receipt. He asked the defendant to accompany him to the loss prevention office. The defendant began to walk with Reitz toward the office, but halfway to the back of the store, he turned around and ran toward the exit. Reitz was able to apprehend the defendant with the assistance of two other store employees. Reitz then called the Collinsville police department to report the theft.

¶ 7        Reitz testified that although the other suspect paid for the vacuum cleaners with a debit card, no effort was made to find out who he was and charge him in the theft. The receipt from the two vacuum cleaners was entered into evidence. It showed that the total value of the two items was $513.72.

¶ 8        The State played a video recording from the store's security cameras. Although the recording itself was not admitted into evidence and is not part of the record on appeal, Reitz described for jurors what they were seeing. In relevant part, Reitz noted that the recording shows the defendant and the other suspect getting out of the same car and entering the store together. It also shows the other suspect leaving the store with the vacuum cleaners in a cart. Reitz then noted that the recording shows the other suspect pulling his car alongside the entrance to the lawn and garden section, getting out of the car, and entering the store through the lawn and garden entrance.

¶ 9        Officer Steven Pyrdeck also testified at the defendant's trial. He was the officer who responded to Reitz's call, placed the defendant under arrest, and booked him into the county jail. Officer Pyrdeck explained that the standard booking procedure includes preparing an inventory of all the personal belongings in a defendant's possession at the time of arrest. He testified that the inventory of the defendant's possessions here did not include cash or any credit cards. The inventory was entered into evidence. The inventory list also did not include a debit card.

¶ 10       The jury found the defendant guilty of both charges. The court initially sentenced the defendant to seven years on each charge; however, the court subsequently granted, in part, a motion to reduce sentence filed by the defendant. In its amended order, the court sentenced the defendant to three years on the charge of retail theft, to be served concurrently with the seven-year sentence for burglary. This appeal followed.

¶ 11       The defendant argues that the evidence was insufficient to support his burglary conviction. We review challenges to the sufficiency of the evidence in the light most favorable to the State. We will reverse a conviction on the basis of insufficient evidence only

where the evidence is so insubstantial that no rational trier of fact could find each element of the charged offense beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999).

¶ 12    In Illinois, there are two different ways the State may charge burglary. The State may allege that the defendant knowingly entered a building unlawfully with the intent to commit a felony or theft. Alternatively, the State may allege that the defendant entered the building lawfully, but then knowingly remained unlawfully with the intent to commit a felony or theft. *People v. Boone*, 217 Ill. App. 3d 532, 533, 577 N.E.2d 788, 789 (1991).

¶ 13    Under either theory, the State must generally show *both* that the defendant entered or remained unlawfully *and* that he did so with the requisite intent. *People v. Bailey*, 188 Ill. App. 3d 278, 284, 543 N.E.2d 1338, 1341 (1989) (citing *People v. Weaver*, 41 Ill. 2d 434, 439, 243 N.E.2d 245, 248 (1968)). However, in the context of a building open to the public, such as a retail store, the permission to enter does not extend to people who enter for purposes that are inconsistent with the purpose for which the building is open to the public. *People v. Blair*, 52 Ill. 2d 371, 374, 288 N.E.2d 443, 445 (1972); *Weaver*, 41 Ill. 2d at 439, 243 N.E.2d at 248. Thus, in a public building case, the State need not prove unlawful presence apart from proof of the defendant's intent. *Bailey*, 188 Ill. App. 3d at 285, 543 N.E.2d at 1342.

¶ 14    Here, the State charged the defendant with burglary by unlawfully entering the Collinsville Walmart. Thus, the State was required to prove that he intended to commit the theft when he entered. See *People v. Perruquet*, 173 Ill. App. 3d 1054, 1060, 527 N.E.2d 1334, 1338 (1988) (citing *Weaver*, 41 Ill. 2d at 439, 243 N.E.2d at 248). Although intent, like every other element of the offense, must be proven beyond a reasonable doubt, the defendant acknowledges that it may be proven through circumstantial evidence. *People v. Obrochta*, 149 Ill. App. 3d 944, 949, 500 N.E.2d 1059, 1062 (1986). Indeed, circumstantial evidence is most often the *only* way to prove a defendant's intent to commit a theft or other crime. *People v. Richardson*, 104 Ill. 2d 8, 13, 470 N.E.2d 1024, 1027 (1984). We emphasize that the question is not whether any possible innocent explanation exists, but rather, the question is whether the evidence was sufficient to allow a rational jury to reasonably infer that the defendant intended to commit the theft when he entered the store. See *Richardson*, 104 Ill. 2d at 13, 470 N.E.2d at 1027. We find that it was.

¶ 15    Here, the defendant and his cohort acted in an orchestrated plan to steal the two vacuum cleaners. Time stamps on the security recording showed that the defendant was only in the store for a total of 10 minutes. During this brief time, several steps had to take place for the defendant and his accomplice to commit the theft. First, they went to the vacuum cleaner aisle and put identical vacuum cleaners in their carts. Then the accomplice paid for the vacuum cleaners, left the store, and returned through the separate entrance to the lawn and garden section. Meanwhile, the defendant went to the lawn and garden section, where the other man found him and handed him the receipt. The defendant then attempted to leave the store with the vacuum cleaners and the receipt for identical merchandise. The idea that the two men decided on this carefully orchestrated plan spontaneously after entering the store is simply not plausible. Our conclusion is bolstered by Reitz's testimony that the two men did not appear to be conversing with each other at any point.

¶ 16 The defendant contends that his entry into the store was "unremarkable" and "similar to that of millions of others." However, he offers no argument to support this conclusion. At oral argument, the defendant pointed out–correctly–that the issue in this case is whether the State proved that he and the other suspect came up with their plan to steal the vacuum cleaners before entering the store. As we have already found, this is the most rational inference to be drawn from the evidence of their actions once inside the store. See *Richardson*, 104 Ill. 2d at 12-13, 470 N.E.2d at 1026-27 (explaining that jurors may rely on reasonable inferences drawn from the evidence presented, and finding the evidence sufficient where intent to commit a theft was the most plausible explanation for the defendant's actions). We find that the evidence was sufficient to prove beyond a reasonable doubt that the defendant entered the store with the intent to commit the theft.

¶ 17 The defendant next contends that he is entitled to four additional days of credit against his sentence for time spent in custody prior to trial. After his arrest, the defendant spent four days in custody before being released on a recognizance bond. He was later arrested again and spent 20 days in custody before being released on bond. The sentencing order gives the defendant credit for only 20 days in custody. The State concedes that the defendant is entitled to 24 days of sentence credit, and we agree. See 730 ILCS 5/5-8-7(b) (West 2008). Therefore, pursuant to this court's authority under Illinois Supreme Court Rule 366(a) (eff. Feb. 1, 1994), we amend the order to reflect 24 days of sentence credit for time spent in pretrial custody.

¶ 18 For the foregoing reasons, we affirm the defendant's conviction and amend the sentencing order to reflect 24 days of sentence credit.

¶ 19 Affirmed as modified.