# Illinois Official Reports

## Appellate Court

---

### *People v. York*, 2020 IL App (2d) 160463

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDRE D. YORK, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-16-0463 |
| Filed | April 22, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-CF-1105; the Hon. Brian F. Telander, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd and Thomas A. Lilien, of State Appellate Defender's Office, of Elgin (Phyllis J. Perko, of Harlovic and Perko, of West Dundee, of counsel), for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Amy M. Watroba, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Hudson and Bridges concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, defendant, Andre D. York, was convicted of retail theft (720 ILCS 5/16-25(a)(1), (f)(2) (West 2014)) and burglary (*id.* § 19-1(a)), and he was sentenced to concurrent terms totaling six years' imprisonment. On appeal, he argues that he was not proved guilty of burglary beyond a reasonable doubt. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3 The count charging defendant with burglary alleged

> "that on or about the 2nd day of June 2015, *** [defendant] committed the offense of burglary in that said defendant, without authority, knowingly entered a building, Jewel, *** with the intent to commit a theft therein."

¶ 4 Before trial, the State filed a motion *in limine*, seeking to admit at trial evidence that defendant had committed similar crimes in the past. The trial court granted the motion with respect to three offenses, finding that they showed defendant's intent, absence of mistake, and state of mind regarding the current offense. Defendant moved the court to reconsider, and the court denied the motion.

¶ 5 Evidence presented at trial revealed that James Menk was working at the Jewel in Bartlett on June 1, 2015. At around 2 p.m., he was in the back of the liquor department, stocking shelves. Defendant walked quickly into the liquor department, pushing a cart with a package of steaks in it.

¶ 6 Defendant pushed his cart to the middle of an aisle, walked to the back of the aisle, looked around briefly, and grabbed two bottles of Bombay Sapphire gin. Defendant returned to his cart, placed the bottles in the cart, and then walked back to retrieve two more bottles of gin. Defendant returned to his cart, put these two bottles in the cart, and then walked toward the front of the aisle. Defendant grabbed two bottles of Casa Noble tequila,[1] put them in his cart, and returned to the area where the tequila was stocked. Defendant grabbed another bottle of Casa Noble tequila and a bottle of Jose Cuervo tequila, put these bottles in his cart, and quickly pushed his cart up the aisle and toward the front of the store.

¶ 7 Defendant then walked toward the checkout aisles. Several were open. Defendant walked through a closed checkout aisle. This aisle was the last checkout aisle and was next to another closed register. Defendant walked out of the store without paying for any of the alcohol or the steaks. Defendant walked quickly to the very rear of the Jewel parking lot, which was not very crowded. Defendant loaded the liquor in a car that was waiting for him and then got in the front-passenger seat. The car exited the parking lot, the police were called, and defendant and the driver were apprehended a short time later. Discovered in the back seat of the car were the bottles of alcohol and the steaks taken from the Jewel. The steaks were in a Jewel bag.

¶ 8 While defendant was in jail awaiting trial, he made several phone calls to friends and family. During these calls, defendant indicated that he should have been the one driving the getaway car, he wanted to make "fast money," he had to get $130 before he went home to see

_____

[1]The transcript indicated that the tequila was Casanova. However, pictures of the alcohol revealed that it was Casa Noble.

his father, and, once he took care of "business," he was going back to work. Defendant said that "this gonna be my last time doing this here and that's when I got caught up."

¶ 9    Evidence was also presented that defendant had committed similar crimes in January 2013, November 2009, and October 2009. On each occasion, defendant entered a supermarket, walked toward the liquor department, and retrieved several bottles of alcohol. Defendant left each store without paying for the alcohol. On some occasions, defendant placed the alcohol in a grocery cart. Once, defendant placed the alcohol in grocery bags that he retrieved from his coat pocket. On another occasion, defendant told the police that "he had to do it," and he "requested that [the police] don't send him back to prison."

¶ 10   The court found defendant guilty of retail theft and burglary. In so doing, the court noted:

> "[T]he [S]tate relies on the defendant's actions, which it claims, and I do agree in some sense many of his actions are unusual with respect to a person who just walked in the store and got the idea. His actions on the tape and the testimony do look deliberate. They do look—just talking about his actions now—that they're planned out. He's direct in what he does. He goes for the high value, the Bombay Sapphire Gin and things like that, and immediately put[s] them in the cart and turn[s] around and immediately go[es] for the door."

The court noted that defendant then headed to the "get-away driver waiting in the far confines of the parking lot."

¶ 11   The court then considered the prior theft offenses and the phone calls. The court observed that the prior thefts were "strikingly similar to this case" and showed a "pattern here" and "[defendant's] purpose." "[T]he tapes that [the court] heard, clearly make it sound in support of the [S]tate's theory that this was a planned-out thing." Defendant indicated that "[he] had to do what [he] had to do, [he] went in there and [he] took care of [his] business, [he] did what [he] needed to do because [he] needed to make some fast money." This established that, "when he walked in the door, he had the intent to commit a theft."

¶ 12   Defendant filed a posttrial motion, arguing that it was improper for the court to admit the prior thefts and that he was not proved guilty of burglary beyond a reasonable doubt. The court denied the motion, noting that it considered the prior thefts only for the limited purpose of establishing defendant's intent. The court reiterated that defendant's actions in the Jewel and the statements he made during the phone calls established his guilt beyond a reasonable doubt.

¶ 13   This timely appeal followed.

## II. ANALYSIS

¶ 15   At issue in this appeal is whether defendant was proved guilty of burglary beyond a reasonable doubt.[2] When the sufficiency of the evidence is challenged on appeal, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. In assessing the sufficiency of the evidence, it is not our function to retry the defendant or to substitute our judgment for that of the trier of

---

[2]Defendant also argued in his brief that the limited-authority doctrine does not apply in cases involving retail theft. Defendant has withdrawn this argument in light of *People v. Johnson*, 2019 IL 123318.

fact. *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 18. Rather, it is within the province of the trier of fact "to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence." *People v. Graham*, 392 Ill. App. 3d 1001, 1009 (2009). We will reverse a defendant's conviction only if "the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt." *Id.*

¶ 16   As relevant here, section 19-1(a) of the Criminal Code of 2012 (720 ILCS 5/19-1(a) (West 2014)) provides that "[a] person commits burglary when without authority he or she knowingly enters [premises]*** with intent to commit therein a felony or theft." A person may commit a burglary by entering a building that is open to the public if the entry is inconsistent with the purpose for which the building is open. *People v. Durham*, 252 Ill. App. 3d 88, 91 (1993); *People v. Boose*, 139 Ill. App. 3d 471, 473 (1985). For example, entering a store with the intent to commit a theft is outside the scope of the purposes for which authority to enter a store is granted. See *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 13; *Boose*, 139 Ill. App. 3d at 473.

¶ 17   Defendant claims that the State failed to prove beyond a reasonable doubt that when he entered the store he had the intent to commit a theft. Intent may be proved by circumstantial evidence and inferences drawn therefrom. *Rudd*, 2012 IL App (5th) 100528, ¶ 14. "Circumstantial evidence is 'proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience.' " *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010) (quoting *People v. Stokes*, 95 Ill. App. 3d 62, 68 (1981)). In a burglary prosecution, the relevant surrounding circumstances include, but are not limited to, the time, place, and manner of entry into the premises; the defendant's activity within the premises; and any alternative explanations offered for the defendant's presence. See *People v. Richardson*, 104 Ill. 2d 8, 13 (1984).

¶ 18   An inference of intent does not require the trier of fact to look at all possible explanations consistent with the defendant's innocence or to be satisfied that each circumstance was proved beyond a reasonable doubt. See *People v. Smith*, 2014 IL App (1st) 123094, ¶ 13. Rather, a defendant's intent is proved beyond a reasonable doubt based on all the evidence, when considered as a whole. See *id.*

¶ 19   Viewing the circumstantial evidence in the State's favor, as we must, we conclude that a rational trier of fact could have found that defendant entered the store with the intent to commit a theft. As the trial court observed, defendant's actions in the store were quick and deliberate, a getaway driver was waiting for him far from the store's entrance, defendant had committed similar crimes in the past, and defendant suggested during his phone conversations that he had planned to commit a theft at the Jewel that day.

¶ 20   Relying on *People v. O'Banion*, 253 Ill. App. 3d 427 (1993), defendant argues that, to prove him guilty of burglary beyond a reasonable doubt, the State needed to establish when defendant entered the Jewel, the circumstances of his entry, and what transpired between his entrance and the commission of the theft. We disagree. Although *O'Banion* noted that such facts might have established beyond a reasonable doubt the defendant's entry with the intent to commit a theft, the court in no way suggested that evidence supporting these facts is required before a defendant can be found guilty. *Id.* at 429. Rather, the court merely observed, after noting the absence of such facts, that "there [was] no evidence from which the defendant's intent at the time of the entry could be reasonably inferred." *Id.* As noted above, the court here was presented with evidence of defendant's prior similar crimes and his phone conversations.

From these facts and his observed conduct, circumstances that were not present in *O'Banion*, the court could reasonably infer that when he entered the Jewel defendant possessed the intent to commit a theft. Because of these additional facts here, defendant's reliance on *O'Banion* is misplaced.

¶ 21     Defendant also argues that evidence of the prior crimes and the phone calls are irrelevant in assessing his guilt. Defendant argues that "we certainly cannot know from those prior acts if [defendant] had such an intent at the time he entered the Jewel in the case at bar," because the State introduced no evidence of his intent in these instances. Putting aside the similarities between those crimes and the current offense, defendant loses sight of the implausibility that he would have entered each of the three stores without the intent to commit theft, decided to commit a theft, and then decided to take several bottles of alcohol without paying for them. As the court noted, it is much more conceivable that defendant's prior acts established defendant's pattern of intending to commit burglary in this way, which is something he admitted doing once before. Concerning the phone conversations, defendant argues that all they establish is "guilty knowledge and intent to permanently deprive that pertain to theft, but they have no relevancy or probative value on the issue [o]f when the alleged intent was formed which is the relevant issue for purposes of burglary." Again, we disagree. Although many statements defendant made during the phone conversations suggested that defendant had planned to commit theft before he entered the Jewel, perhaps the most incriminating was defendant's statement that this burglary was going to be his last, as this clearly acknowledged a preconceived plan.

¶ 22                                                    III. CONCLUSION
¶ 23     For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 24     Affirmed.