2025 IL App (1st) 24-1885-U

SIXTH DIVISION

September 30, 2025

No. 1-24-1885

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 16 CR6006601 |
| SABRINA SHAFFER, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Pamela Stratigakis, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We affirm where the evidence was sufficient to sustain defendant's convictions for robbery and residential burglary. Pursuant to the one-act, one-crime rule, one of defendant's convictions for residential burglary must be vacated, and the mittimus corrected to reflect a single conviction of residential burglary.

¶ 2    Sabrina Shaffer was charged by indictment with ten counts of first degree murder, two counts of home invasion, one count of robbery, and four counts of residential burglary stemming from the death of Keith West in December 2015. After a bench trial, Shaffer was found guilty of home invasion, robbery, and residential burglary but was acquitted on all counts of murder. The circuit court merged the robbery and residential burglary convictions into the home invasion conviction and sentenced Shaffer to 14 years in the Illinois Department of Corrections.

¶ 3    On May 24, 2024, this court reversed Shaffer's conviction for home invasion and remanded the matter to the circuit court with instruction to impose sentence on the robbery and residential burglary convictions. *People v. Shaffer*, 2024 IL App (1st) 211556-U. On remand, Shaffer was sentenced to 14 years for robbery and 10 years on each of the two counts of residential burglary to be served concurrently. On appeal, Shaffer argues the State failed to prove her guilty beyond a reasonable doubt of robbery and residential burglary. As the evidence was sufficient to prove Shaffer guilty of robbery and residential burglary, we affirm her conviction on both offenses. We remand the matter to the circuit court with instruction to vacate one of defendant's residential burglary convictions and correct the mittimus to reflect a single conviction of residential burglary.

¶ 4                                    I. BACKGROUND

¶ 5    Prior to a bench trial, the parties stipulated Shaffer was unfit to stand trial because of her mental illness. Shaffer was diagnosed with schizoaffective disorder, polysubstance dependence, and cocaine use. The bench trial was delayed while Shaffer was committed to the Department of Human Service for treatment. In August of 2018, more than a year later, the circuit court found Shaffer restored and fit for trial.

¶ 6    Keith West lived in a studio apartment on the 4500 block of North Sheridan Road in Chicago. Former home healthcare provider James Weinmann and building engineer Michael

Richard found West on the floor of his apartment on December 26, 2015. West was unresponsive, had bruises on his face, and blood around his mouth and nose. West was taken to a hospital. He suffered multiple internal wounds such as hemorrhages in his brain and rib fractures. West had defensive wounds on his hands and arms and there were bruises on his thighs. He succumbed to his injuries on December 28, 2015. The injuries appeared to have been suffered at the same time and within one to three days of his death. West's toxicology report was positive for cocaine, and he was 63 years old at the time of his death.

¶ 7    At the bench trial, Mary Jo, West's sister, testified that West was legally blind. She bought West a bright yellow coat because he was concerned that others may not see him. She was able to identify another individual wearing the coat from photographs included in the record on appeal. On cross examination, Mary Jo stated she did not know whether West let anyone else wear his belongings.

¶ 8    Richard McDonald, the former building engineer, testified that in late 2015, West's apartment building had six floors with a front lobby entrance and an emergency exit in the back. Residents had physical keys to access the front entrance and management had keys to access the building from the emergency exit door. Security cameras recorded the front of the apartment building. McDonald stated Shaffer would visit West in the building once or twice a week. Three weeks before West's death, he heard yelling in West's apartment. He approached West's unit and found West sitting on his couch "quiet, like a deer in headlights," while Shaffer was pacing and yelling: "I know you got it, I know you got it." McDonald told Shaffer she should leave and she yelled at him. He subsequently escorted Shaffer downstairs and watched her leave.

¶ 9    Two weeks later, McDonald encountered Shaffer in the front lobby of the building and told her that West stated he no longer wanted her in the building. The court admitted this testimony for

3

"what McDonald did with the information, not that it existed." Shaffer responded to McDonald that West was her boyfriend, and he could not tell her what to do because he did not own the building. December 26, 2015, McDonald received a phone call from Michael Richard. At approximately 3:00 p.m. Richard then texted McDonald a photograph of West lying on the ground severely injured.

¶ 10    On cross examination, McDonald agreed West was old and frail. He stated that the day he escorted Shaffer from the building, she had been speaking quietly with West to "put on a good act for [McDonald]."  He confirmed Shaffer packed a few bags and took them the day he escorted her out. After his phone conversation with Richard, he was "upset because [he] believed [Shaffer] had hurt Mr. West."

¶ 11    On redirect examination, the State asked him why he believed Shaffer hurt West. McDonald stated he did not like Shaffer because West told him he was afraid of Shaffer, and she stole money from him.

¶ 12    Michael Richard testified that, in December 2015, he worked as a custodian at the building and knew West. On December 26, 2015, he witnessed Shaffer descending the building's stairs carrying a "huge" black garbage bag that appeared to contain items. Richard asked why she was in the building. Following the conversation, Shaffer exited through the front door. Richard closed the building's office then proceeded to West's apartment. He knocked multiple times, but no one answered. He went to McDonald's office for keys to West's apartment and returned. He knocked again and after no reply, opened the door, which had been unlocked. He entered and found West lying on the ground. West's face was bruised, and he had blood around his mouth and nose. Richard went downstairs to find another employee, James Weinmann. Both returned to West's apartment about four minutes after Richard had left.

4

¶ 13     Richard identified a photograph that depicted Shaffer's appearance on December 26, 2015. On cross examination, Richard testified that he did not see Shaffer enter the building on December 26, 2015. When he saw her, she was descending a flight of stairs. He agreed that when he and Shaffer conversed, he was "really close" to her but did not notice any bruising or blood on her clothing or on her person. Shaffer was not limping, out of breath, or running. Richard did not see anyone else leaving the lobby between 2:30 and 3 p.m. that day.

¶ 14     Chicago police sergeant Michelle Wood testified she was a detective assigned to investigate West's case. She went to West's apartment on December 26, 2015. She stated there were blood stains on the sofa beneath a green blanket and the apartment was messy and in "disarray."

¶ 15     On February 4, 2016, Wood interviewed Shaffer. Shaffer identified a photograph of herself wearing West's yellow coat. Wood interviewed Shaffer the next day and recorded the interview. At the bench trial, a five minute video clip of the interview was entered into evidence. The video is part of the record on appeal and was reviewed by this court. In the video, Shaffer states she had lived with West, her boyfriend, for six years and still went to see him. On December 26, 2015, she had "come back down" from an unspecified location with two bags of cocaine, and someone "had knocked [West] out." West's wallet was empty. Shaffer thought West was alive. She left with three of her outfits. She was wearing West's yellow jacket and his "favorite" boots that he, according to her, did not like her to wear.

¶ 16     Shaffer stated she did not know why she left because leaving and taking her clothes made her look guilty, but she is innocent. As she left she saw Richard but did not tell him West had been robbed or was injured lying on the floor. Wood further stated West's yellow jacket and boots were never located.

¶ 17    On cross-examination, Wood agreed that Shaffer stated someone else was there and that person robbed West. Wood also stated she reviewed video footage from the building's surveillance camera which covered 10 a.m. to Shaffer leaving the building at 2:58 p.m. on the day of West's attack. Defense counsel played a 10-second clip of surveillance footage to refresh Wood's memory about someone leaving the building at 2:51 p.m. A longer, stipulated portion of the video spanning from 12:00 p.m. to 3:10 p.m. on December 26, 2015, is also part of the record on appeal and was reviewed by this court. It shows an awning over a doorway and captures multiple people exiting between 2:51 p.m. and 2:58 p.m. At 2:58:50 p.m., a person in a yellow coat, identified as Shaffer in prior photographs, is seen dragging a large black bag, pausing, then walking out of view. No one else in a yellow coat is seen entering or exiting at any other time.

¶ 18    On redirect examination, Wood stated that Shaffer said the person who robbed West entered the building with her, but the surveillance video showed no one matching the robber's description that Shaffer provided. On recross examination, Wood confirmed that after reviewing several hours of footage, Shaffer was never seen entering the building.

¶ 19    The State entered several stipulations, including an evidence technician who recovered a green sweatshirt, wallet, Link card, Chicago Transit Authority (CTA) fare card, and business cards from West's apartment. A forensic scientist testified that DNA analysis revealed a business card with a mixture of 2 DNA profiles, from which neither West nor Shaffer could be excluded. The sweatshirt contained 3 DNA profiles, and again, neither West nor Shaffer could be excluded.

¶ 20    The court acquitted Shaffer on the first 10 counts of murder but convicted her for home invasion, robbery, and residential burglary. The court merged the robbery and residential burglary convictions into the home invasion conviction and sentenced Shaffer to 14 years in the Illinois Department of Corrections. On May 24, 2024, this court reversed Shaffer's conviction for home

invasion and remanded the matter to the circuit court with instruction to impose sentence on the robbery and residential burglary convictions. On remand, Shaffer was sentenced to 14 years for robbery and 10 years on each of the two counts of residential burglary, to be served concurrently. This appeal followed.

¶ 21                                II. JURISDICTION

¶ 22   The circuit court sentenced Shaffer on September 16, 2024. Notice of appeal was timely filed on September 16, 2024. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Il.. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606. (eff. Dec. 7, 2023).

¶ 23                                III. ANALYSIS

¶ 24    On appeal, Shaffer argues the State failed to prove her guilty beyond a reasonable doubt of robbery and residential burglary. Specifically, she contends the evidence at trial was insufficient to prove her guilty of robbery, where the State presented no evidence that she took West's jacket by force or threat of force. She also argues the evidence was insufficient to prove her guilty of residential burglary because there was no evidence that she remained within West's dwelling with the intent to commit robbery or theft.

¶ 25                          A. Sufficiency of the Evidence

¶ 26   When evaluating a sufficiency of the evidence claim, the role of this court is to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307 (1979). This court will not substitute its judgment for that of the trier of fact on issues involving weight of the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 27    The weight of the evidence includes both direct and circumstantial evidence and a criminal conviction can rest entirely on circumstantial evidence. *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 19; *People v. Campbell*, 146 Ill. 2d 363, 380 (1992). A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Jones*, 2023 IL 127810, ¶ 28. We must allow all reasonable inferences from the record in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274 (2004).

¶ 28                                                    B. Robbery

¶ 29    Shaffer argues the evidence was insufficient to support her robbery conviction. She asserts the State failed to present evidence demonstrating she took the jacket against West's will, much less by force or threat of force. She further contends that even assuming West was the victim of a robbery, the State failed to establish she was the perpetrator. In support of this claim, she points to Richard's testimony that he observed no blood on her when she was seen exiting the building. She maintains the evidence was insufficient to establish a nexus between the force used in the assault on West and the taking of his property.

¶ 30    The State asserts the evidence, when viewed in the light most favorable to the prosecution, established Shaffer took West's jacket and boots from his apartment while he was present and that she did so by using force or the threat of imminent force.

¶ 31    "A person commits robbery when he or she knowingly takes property. . . from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2016). "Robbery is a Class 2 felony, unless the victim is 60 years of age or over. . . in which case robbery is a Class 1 felony." 720 ILCS 5/18-1(c) (West 2016).

¶ 32    As an initial matter, we note Shaffer does not argue West was under the age of 60. The record reflects that Shaffer was inside West's apartment shortly before he was discovered severely injured. Surveillance footage captured her exiting the building at 2:58 p.m., wearing a yellow coat that, according to testimony from West's sister Mary Jo, was purchased specifically for him. Moments later, at approximately 3:00 p.m., Weinmann and Richard discovered West unresponsive. Shaffer admitted she knew West was lying severely injured on the floor but took his jacket and boots and made no effort to notify anyone of West's condition. She acknowledged these facts made her "look guilty." Moreover, her DNA was recovered from a card inside West's wallet, and she admitted to officers she looked through the wallet but found it "empty". These admissions support a finding that Shaffer demonstrated a conspicuous consciousness of guilt. *People v. Cain*, 2024 IL App (1st) 230633-U ¶ 38.

¶ 33    Shaffer argues her own admissions should be given little weight because the statements cannot be trusted for the truth of the matter asserted. She cites *People v. Dalton*, 91 Ill. 2d 22, 29 (1982), where the court stated that for various psychological reasons, people "confess" to crimes that either have never occurred or for which they are not legally responsible. The State counters that nothing in the record supports Shaffer's claims of drug use or mental health issues at the time of her statements other than her own "self-reported" declarations made to forensic clinical services after her arrest. Because the assessment of witness credibility and the weight of the evidence lies within the province of the trier of fact, and we defer to the circuit court's findings on such matters, we note the record contains no corroborating evidence to support Shaffer's contention that she was impaired by drug use or suffering from mental illness when she made the statements at issue. *Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). This court will not substitute its judgment for that

9

of the trier of fact on issues involving the weight of the evidence, and we defer to the circuit court's determination as to the credibility of Shaffer's statements. *Id.*

¶ 34    Next, Shaffer contends her acquittal of murder reflects a finding by the circuit court that the State failed to prove it was her who injured West. But an acquittal of murder does not preclude a conviction for robbery, as the two offenses involve distinct elements. See *People v. Taylor*, 318 Ill. App. 3d 464, 475 (1st Dist. 2000); See also *People v. Austin*, 264 Ill. App. 3d 976, 980 (1994) ("an acquittal of a murder charge does not preclude an [armed] robbery conviction."). Shaffer also relies on testimony from Richard, specifically that he observed no blood on her clothing. But the record indicates West's injuries were primarily internal; when he was discovered unresponsive on the floor of his apartment, the only visible blood was coming from his mouth and nose.

¶ 35    Shaffer also argues the indictment alleged she took "a jacket" from West, and the State could not meet their burden of proof by presenting evidence that she took other items such as boots, money, or anything else. But a variance between the language of the indictment and the proof presented at trial does not constitute reversible error unless the variance is material, such that it misleads the defendant in the preparation of her defense. *People v. Maggette*, 195 Ill. 2d 336, 351 (2001). Here, Shaffer denied taking the jacket as alleged in the indictment, and she has not shown how any alleged variance prejudiced her ability to prepare a defense to the charges. *Id.*

¶ 36    We find the evidence sufficient to sustain Shaffer's conviction of robbery, as both the direct and circumstantial evidence, viewed in the light most favorable to the State, established proof beyond a reasonable doubt as to each element of the offense. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). We will not overturn a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory. *Jones*, 2023 IL 127810, ¶ 28.

¶ 37                                      C. Residential Burglary

¶ 38    Shaffer contends the evidence was also insufficient to prove her guilty of residential burglary because there was no evidence that she remained within West's dwelling with the intent to commit robbery or theft.

¶ 39    "A person commits residential burglary when he or she knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another. . . with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a) (West 2014). The plain language of the residential burglary statute provides that a defendant is guilty of residential burglary if he or she remains in the dwelling of another with the intent to commit a theft. *People v. Dillavou*, 2011 IL App (2d) 091194, ¶ 12. The intent to commit theft may be established through circumstantial evidence and the reasonable inferences drawn therefrom. *People v. York*, 2020 IL App (2d) 160463, ¶ 17. "Circumstantial evidence is the proof of facts and circumstances from which a trier of fact may reasonably infer other facts that ordinarily follow in the natural course of events." *Id*.

¶ 40    Here, it is undisputed Shaffer was present inside West's apartment on December 26, 2015. Accordingly, the issue before us is whether she remained in the apartment with the intent to commit theft. As our supreme court acknowledged in *People v. Bradford*, 2016 IL 118674, ¶ 26, it is not clear what evidence would be sufficient to establish that a defendant "remains" within a place to commit a theft, and no guidance has been provided as to what a defendant must do, or what duration of time he must spend in a place, to remain there without authority. Nevertheless, it is well established that intent may be inferred from circumstantial evidence, and authority to remain may be implicitly withdrawn based on context and conduct. See *Dillavou*, 2011 IL App (2d) 091194, ¶ 16 ("a defendant's authority to be in the home of another person is implicitly withdrawn when the defendant forms the intent to commit a crime.").

11

¶ 41    Notably, the record shows Shaffer acknowledged she knew West was severely injured and lying on the floor of his apartment. Rather than seek help, she exited the building wearing his belongings, indicating a disregard for both his well-being and his property. She also admitted she searched West's empty wallet, which further supports an inference of intent to commit a theft, as it suggests an active effort to locate and appropriate West's valuables. Her silence and failure to alert anyone to West's condition reinforces the conclusion that she remained in the apartment not out of concern, but with the intent to exploit the situation for personal gain. This behavior is not consistent with mere presence; it is consistent with remaining in the premises with the intent to commit theft. *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 14. Viewing the evidence in the light most favorable to the State, we find a rational trier of fact could reasonably conclude that, although Shaffer may have lawfully entered West's apartment, remaining in the apartment after West was incapacitated and leaving with his personal property, demonstrates she stayed without authority and with the intent to commit a theft. *Dillavou*, 2011 IL App (2d) 091194, ¶ 16.

¶ 42    Shaffer further contends the State failed to prove she intended to permanently deprive West of his jacket and boots and therefore did not establish the requisite intent to commit theft or robbery. She argues it is common in relationships for individuals to "borrow" clothing. But the trier of fact is not required to consider every possible explanation consistent with the defendant's innocence, nor must each individual circumstance be proven beyond a reasonable doubt. *York*, 2020 IL App (2d) 160463, ¶ 18. Rather, intent may be established when the evidence, viewed in its entirety, supports that conclusion. *Id*. Again, Shaffer was seen leaving the apartment building shortly before West was found unresponsive. She admitted to going through his wallet, acknowledged that he had been robbed, yet failed to seek help. Instead, she left with his belongings. Considering the totality of the circumstances, a rational factfinder could reasonably conclude that

Shaffer remained in West's apartment without authority and intended to commit a theft, supporting her conviction for residential burglary. *People v. Sauls*, 2022 IL 127732, ¶ 57. As stated previously, we will not overturn a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory. *Jones*, 2023 IL 127810, ¶ 28.

¶ 43                                    D. Correction of Mittimus

¶ 44    Finally, Shaffer argues her two convictions for residential burglary are based on a single act of unauthorized remaining within West's dwelling and under the one-act, one-crime rule, she asserts one of the convictions must be vacated and the matter remanded to the circuit court with instruction to issue a corrected mittimus. The State agrees that one of Shaffer's residential burglary convictions should be vacated and the mittimus should be corrected to reflect a single conviction for residential burglary.

¶ 45    We note Shaffer acknowledged she failed to raise this argument before the circuit court, and by failing to do so, this argument can only be reviewed under second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10. The plain error doctrine allows review of forfeited errors when a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "the error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Barnes*, 2024 IL App (1st) 221598-U (citing *People v. Moon*, 2022 IL 125959, ¶ 20). Whether a violation of the one-act, one-crime rule has occurred presents a question of law, which we review *de novo*. *People v. Robinson*, 232 Ill. 2d 98, 105 (2008).

¶ 46    This court applies a two-step analysis to determine whether multiple convictions violate the one-act, one-crime rule. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). First, the court considers

whether the defendant's conduct consisted of a single physical act or separate acts. Second, if multiple acts are identified, the court determines whether any of the offenses are lesser included offenses. *Id*. If none of the offenses are lesser-included, multiple convictions are proper. *Id*. An "act" is "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 47 Here, both convictions of residential burglary were based on the same act of Shaffer remaining in West's apartment without authority and with the intent to commit a theft. Accordingly, one of Shaffer's residential burglary convictions should be vacated and the mittimus corrected to reflect a single conviction of residential burglary. *People v. Miller*, 238 Ill. 2d 161, 165 (2010).

¶ 48                                    IV. CONCLUSION

¶ 49 For the foregoing reasons, we remand the matter to the circuit court with instruction to vacate one of defendant's residential burglary convictions and correct the mittimus to reflect a single conviction of residential burglary. We affirm the judgment of the circuit court of Cook County.

¶ 50 Affirmed in part and vacated in part; mittimus corrected.